## LEONARD *vs.* PEEPLES.

1. In order to prove statute or customary law, it is not competent for a witness to testify simply, that such is the one or the other. There is higher evidence to substantiate both.
2. Because property is not as valuable as the purchaser supposed, is no reason in the absence of fraud or warranty, for withholding any portion of the price agreed to be paid.
3. Where one misrepresents a fact, knowing it to be false, or asserts a thing to be so, not knowing whether it be true or not, and it proves to be false, he is, in both of these cases, guilty of a moral as well as a legal fraud. But where one honestly believes the truth of what he affirms, although it turns out he was mistaken, can he be guilty of a legal fraud (being free from moral turpitude) so as to subject him to liability for the mistake, unless the representations are of a character to amount to a warranty? *Quere.*

Debt, in Murray Superior Court. Tried before Judge Crook, July, 1859.

This was an action of debt by Alexander J. Leonard against John H. Peeples, on a promissory note, of which the following is a copy, viz:

" $424 87. One day after date we, or either of us, promise to pay John A. J. Leonard, or bearer, the sum of four hundred and twenty-four dollars and eighty-seven cents, for value received of him October 1st, 1853.
(Signed)                    JOHN H. PEEPLES,
                            JOHN W. BAKER,
                            H. A. JOHNSON."

Defendant pleaded the general issue; and further, that said note was procured by fraud and misrepresentation, in this, that said note was given in part for an intesest in a claim in a gold mine in the State of California, sold by plaintiff to defendant and his associates, Baker and Johnson; and that plaintiff represented to defendant and his associates, that if they would purchase said interest they could clear three thousand dollars, and defendant relying on said statement, not knowing anything of the mine himself, bought said interest for $1,200 00, seven hundred and seventy-five dol-

lars and thirteen cents of which was paid in cash, and the note sued on, given for the balance; and defendant avers that said representation was false, that said mine was worth nothing, and that the consideration of said note totally failed, etc.

The testimony being closed, the Court charged the jury as follows:

1. Whatever representations were made by plaintiff at the time of the sale, or pending the negotiation, he is bound by, and that they amount in law to a warranty that the thing sold is as represented.

2. That if plaintiff represented the mind sold to be a good one, (he being a miner, and having an opportunity of knowing,) and Peeples had not seen and examined it, and these representations were the inducement to purchase, then it is immaterial whether the representations were fraudulently made, or by mistake. The plaintiff must suffer the consequences resulting therefrom.

3. That the testimony of one witness who testifies positively to a fact, outweighs the testimony of many witnesses who testify that they have no knowledge of it.

4. If you shall believe, from the evidence, that the mine was of some value, and that it was equal in value to the amount paid, *in cash*, by defendant, and of no more value, then the plaintiff is not entitled to recover this note—the balance of the purchase money.

Plaintiff's counsel requested the Court to charge, that if defendant inquired of Freeman (the treasurer of the mine) as to its value, and that if he exhibited his day-books showing their mining operations, and which was true, then the parties negotiated upon equal terms.

This charge the Court refused to give, holding that this testimony was introduced for the purpose of showing that defendant did not act upon the representations alone, and for no other purpose.

Plaintiff's counsel further requested the Court to charge that the sale of a gold mine is peculiar, and that representations concerning them are mere matters of opinion, and did not amount to a warranty, that they were as represented.

This charge the Court declined to give, but charged, that if plaintiff was a miner, and acquainted with the business of mining, and had worked the mine sold, then he is bound by any false representations made by him to defendant, as to its

value, and clearly so, when they are made to one who has neither seen nor examined the mine and buys upon such representations.

The Court further charged, that the doctrine of *caveat emptor* does not apply, and that it was not necessary to defendant's support of his plea, or defense, that he should tender back the property purchased.

The jury found for the defendant, whereupon plaintiff moved for a new trial, on the grounds—

1. That the Court erred in allowing defendant to prove by witnesses, that it was the custom and law in the mining districts of California, when a mine claim was purchased, and proved or turned out to be unprofitable or worthless, for the vendor to give up the note given for the purchase money.

2. Because the Court erred in its charge to the jury, and its refusal to charge as above stated.

3. Because the verdict was contrary to law and the evidence.

The Court refused the motion for a new trial, and plaintiff excepted.

J. A. W. JOHNSON, for plaintiff in error.

WALKER, represented by DABNEY, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

Leonard sold to Peeples and two others, an occupant claim, which he held in the gold diggings of California, for $1,000. The purchaser paid, say $575 00 cash, and gave the note sued on for the balance. This action is brought to collect this note, and the defense set up is two-fold—fraud in the contract and failure of consideration.

There was much testimony read on the trial, and amongst the rest, the Court allowed the defendant to prove that according to the law and custom of that country, that whenever a note was given for a gold mine and it proved unproductive, or did not turn out according to expectation, it was given up, and this is the first error complained of.

California was a State when this transaction took place in the fall of 1853, and no evidence is adduced of any such law at that time, and no such custom was established as to author-

ize the Court below to recognize and act upon it. No proof was offered that Leonard had notice of any such custom, or of the existence of any such custom which was public and uniform and peaceable, so as to infer that this contract was made in reference to it. If there be such a custom, it is so unreasonable, that it was probably enforced by the bowie knife.

All the other exceptions grow out of the charges and refusals to charge on the part of the Court. As we shall send this case back, we forbear to express any opinion as to the preponderance of the proof.

And before examining each specification in the motion for a new trial, I would remark, generally, that the Court seems to have labored under this misapprehension, that anything said at the time of the trade, whether it amounted to a positive representation or a mere expression of opinion, was a warranty for the breach, of which the plaintiff was responsible. Indeed, this is the very language of the first charge which is assigned as error.

" Because the Court charged the jury that whatever representations were made by the plaintiff, pending the negotiation and at the time of the sale, to the defendant, were binding on the plaintiff, and amounted in law to a warranty that the mine sold, was of the character it was represented."

All the evidence on the part of plaintiff, was to the effect that if the mine proved as productive as it had been, the upper end of it would reimburse the purchasers, and the lower end would be net profit. Surely the opinion thus expressed, does not amount that these results would follow.

Another error complained of is this: The Court charged the jury that if they should believe from the testimony, that the mine sold was of some value, and that it was equal in value to the amount that the plaintiff had received at the time of the purchase, and no more, that then the plaintiff was not entitled to recover the balance.

This is putting the issue upon value, alone, irrespective of fraud or warranty. This cannot be the law of the case, or the rule of the plaintiff's rights.

We do not think the Court was bound to charge, as law, the first request made by counsel for plaintiff, namely, that, "if the defendant inquired of the witness Freeman," (the treasurer of the company) "as to the value of the mine,

and the said witness showed him a book of their mining, which was true and correctly kept; that defendant was upon equal terms with the plaintiff."

It will be borne in mind, that the parties were fifty miles distant from the mine when the sale was made. The plaintiff had been working it for some time The defendant had never seen it. Of course, then, a bare inspection of the book kept by the company, would not itself put the defendant upon an equality with the plaintiff.

We cannot sustain the instruction which the Court gave the jury, that "the testimony of Freeman, the witness, was admitted for the purpose of showing that the defendant in making the purchase, did not act solely upon the plaintiff's representations, and that only for that purchase could they consider it."

Mr. Freeman was present at the trade, and his evidence is full, as to all that transpired at the time ; and his testimony, if credible, establishes that all the plaintiff said was by way of opinion only; and he substantiates the truthfulness of Leonard's representations. His evidence, therefore, was material on many accounts.

We do not think the plaintiff was entitled to the second charge which he asked, that "the sale of gold mines was peculiar, and that representations concerning them are matters of opinion only, and do not amount to a warranty, that they are as represented.

This, we apprehend, depends entirely upon the nature of the representations. They may be so positive as to amount to a warranty, and if so, they stand upon the same footing as representations concerning any other species of property.

The second and last charge are very similar. The second is to this effect: That "if the plaintiff represented the mine sold to be a good one, (he being a miner and having an opportunity of knowing,) and Peeples had not seen and examined it, and these representations were the inducement to purchase, then it is wholly immaterial whether the representations were fraudulently made, or by mistake. The plaintiff must suffer the consequences resulting therefrom."

And the last charge was, that "if the plaintiff was a miner, and had a practical knowledge of the business, and had operated in the mine sold, he was bound by any false representation made by him to Peeples as to the value of the

Leonard *vs.* Peeples.

mine, especially as Peeples had not seen nor examined the mine, and bought only upon the faith of such representations."

Much has been written upon the principle of law involved in these charges. This ought to be the doctrine of the Courts upon this subject: When one misrepresents a fact, knowing it to be false, or asserts a thing to be so, not knowing whether it be true or not, and it turns out to be false, he is, in both of these cases, guilty of a moral, as well as a legal fraud. But where one honestly believes the truth of what he affirms, he is clearly not guilty of moral turpitude, and I should be slow to convict him of a legal fraud, so as to subject him to a liability for the mistake, unless the representations were of a character to amount to a warranty. (See *Thorn vs. Bigland*, 8 *Exch. Rep.*, 731; *Wilde vs. Gibson*, 1 *H. L. Cases*, 605, 603; *Taylor vs. Ashton*, 11 *M. & W.*, 407, 415.)

If the defendant's witnesses in this case have sworn the truth, the mine did not pay expenses. And yet, after Johnson and Baker had been six weeks at work in the mine, they bought out Mr. Peeples' interest at the price he paid Leonard, and continued to work the mine until they had dug out every foot of it. It will be for another jury, who will be more competent to the task than we are, to reconcile this and other portions of the testimony.